UNITED STATES, Appellee,

v.

Jerry D. BROWN, Private, U. S. Marine
Corps, Appellant.

No. 33,997.
NCM 76–2400.

U. S. Court of Military Appeals.

Oct. 16, 1978.

For Appellant—*Captain A. W. Eoff, II,*
JAGC, USN (on brief).

For Appellee—*Lieutenant Colonel P. N.
Kress,* USMC (on brief) and *Lieutenant
Commander A. K. Llewellyn,* JAGC, USNR
(on brief).

Opinion of the Court

PER CURIAM:

The appellant was charged with wrongful
possession of heroin, in violation of Article
134, Uniform Code of Military Justice, 10
U.S.C. § 934. Upon accepting his plea of
guilty, the military judge sentenced the ap-
pellant to a bad-conduct discharge, confine-
ment at hard labor for 10 months, and
forfeiture of all pay and allowances, which
sentence was modified by the convening
authority to reduce the period of confine-
ment to 8 months. The United States Navy
Court of Military Review has affirmed the
findings and the sentence.

The staff judge advocate's post-trial re-
view was conducted at the Marine Corps
Air Station, El Toro, Santa Ana, California.
Because the appellant's trial defense coun-
sel was, at the time of the completion of the
review, undergoing treatment for alcohol-
ism at the naval hospital in Long Beach,
California, the staff judge advocate served
a copy of his review upon a substitute de-
fense counsel locally, in attempted compli-
ance with the mandate of *United States v.
Goode,* 1 M.J. 3 (C.M.A. 1975).

The substitute defense counsel ac-
knowledged receipt of the review and filed
a response thereto, the first paragraph of
which is pertinent to this case on appeal:

    a. The undersigned did not participate
in this trial and has no knowledge of this
case. Consequently any review by the

undersigned can only be as another review officer and not as a defense counsel who would have known the accused, facts and circumstances outside the record of trial or as a participant in the actual trial proceedings. It is felt that it is only the defense counsel who actually participated in the trial who could properly comment on subject advice as a defense counsel.

Absent any indication in the record that the substitute counsel ever contacted the appellant,[1] he failed to enter into an attorney-client relationship with the appellant,[2] and thus, the substitute defense counsel improperly purported to represent the appellant at that stage of the proceedings.[3] *United States v. Iverson*, 5 M.J. 440 (C.M.A. 1978).

The decision of the United States Navy Court of Military Review is reversed. The record is returned to the Judge Advocate General of the Navy for remand to an appropriate authority to determine the present availability of the trial defense counsel. *United States v. Iverson, supra.* If found to be available to continue to perform in the attorney-client relationship with the appellant, he will be served with the post-trial review and afforded the opportunity to file a response thereto. *United States v. Goode, supra.* If found actually

not available, a substitute defense counsel will be appointed to enter into an attorney-client relationship with the appellant and to perform as the appellant's defense counsel for the purposes of *Goode, United States v. Iverson, supra,* and for any other appropriate post-trial activity on behalf of the appellant. *United States v. Palenius*, 2 M.J. 86 (C.M.A. 1977). In the event the proper authority shall conclude that this is impracticable, he or she may, in his or her discretion, dismiss the charges against the appellant.

COOK, Judge (dissenting):

While I agree with the unstated, but implied, conclusion of the majority that the illness of military trial defense counsel justified appointment of a new lawyer for the accused for the post-trial review,[1] I disagree with its inference, from the first part of a statement by substitute counsel, that substitute counsel had not entered into an attorney-client relationship with the accused. As I read counsel's statement, it did not constitute a repudiation, or denial, of his assignment, but was merely a protest, in principle, to the appropriateness of having a new lawyer, unfamiliar with the trial, conduct the *Goode* examination of the staff judge advocate's review.[2] The declaration

---

1. In fact, the quoted paragraph of the *Goode* response indicates just the opposite.

2. *United States v. Iverson*, 5 M.J. 440 (C.M.A. 1978); *United States v. Brady*, 8 U.S.C.M.A. 456, 24 C.M.R. 266 (1957); *United States v. Miller*, 7 U.S.C.M.A. 23, 21 C.M.R. 149 (1956). *See United States v. Larneard*, 3 M.J. 76 (C.M.A. 1977); *United States v. Palenius*, 2 M.J. 86 (C.M.A. 1977).

3. If the trial defense counsel was not actually unavailable, the Government improperly interfered with the existing attorney-client relationship between the trial defense counsel and the appellant. *United States v. Iverson, supra.* The basis for the conclusion that the trial defense counsel could not be served with the review was the combination of his physical location in another place in California, an adverse opinion of some sort, of a Navy psychiatrist, regarding the defense counsel's emotional health, and his then hospitalization for treatment of alcoholism. The Court expresses no opinion on whether these factors combine to have rendered the defense counsel actually un-

available to continue to perform in the attorney-client relationship with the appellant. *United States v. Iverson, supra.*

1. See my separate opinion in *United States v. Iverson*, 5 M.J. 440 (C.M.A. 1978).

2. The protest does not impress me on the merits. Unlike the preparation of a brief relating to the trial proceedings that trial defense counsel is authorized to submit (Article 38(c), Uniform Code of Military Justice, 10 U.S.C. § 838(c)), the *Goode* examination of the post-trial review is essentially the same as the examination of the review that was made by appellate defense counsel before *Goode*. Almost always, appellate defense counsel is not the lawyer who represented the accused at trial. A change of lawyers for an appeal does not impress me as impairment of the right to effective assistance of counsel. It is the regular and approved course in the military justice practice. *See United States v. Kelker*, 4 M.J. 323 (C.M.A. 1978).

of principle was not an admission that an attorney-client relationship with the accused had never been established, as was the case in *United States v. Iverson,* 5 M.J. 440 (C.M.A. 1978).

The majority bases its ruling that a violation of *Goode* occurred on the absence of evidence to show that counsel had communicated with the accused, and that the accused had accepted him as his lawyer. In my opinion, that ruling is contrary to *United States v. Daly,* 4 M.J. 145 (C.M.A. 1977). There, the Court said that an "attorney and counselor in the bar of a court who appears in that court in behalf of a client is *presumed* to be so authorized"; and, absent evidence "implying the negative", the Court refused to "impugn the integrity" of the lawyer "by requiring . . . [him] to prove what he . . . has affirmatively represented to be a fact." *Id.* at 146 (Footnotes omitted). The inference of an established attorney-client relationship from counsel's representation of his position as attorney for a party was reaffirmed in *United States v. Annis,* 5 M.J. 351 (C.M.A. 1978), and *United States v. Jeanbaptiste,* 5 M.J. 374 (C.M.A. 1978).

In *Annis,* after trial but before completion of the post-trial review, trial defense counsel left the court-martial jurisdiction incident to reassignment to another command. Substitute military counsel was appointed. He spoke with the accused, and was advised the accused intended to retain civilian counsel. Later such counsel was retained. Civilian counsel requested retention of substitute counsel as an "associate" and, thereafter, both civilian and substitute military counsel were served with the post-trial review. Civilian counsel filed the defense response. In the principal opinion for the Court, Chief Judge Fletcher observed that the defense actions amounted to "consent to . . . [substitute military counsel's] representation" of the accused and "any error in the severance of appellant's attorney-client relationship with . . . [trial defense counsel] must . . . be considered waived." *Id.* at 353.

In *United States v. Jeanbaptiste, supra,* the accused was represented at trial by civilian counsel and appointed military counsel, who had been retained as "associate" counsel. *See* Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b). Before preparation of the post-trial review, military "associate" counsel left the jurisdiction for duty at the U.S. Military Academy. Another military lawyer was detailed as assistant defense counsel for compliance with the *Goode* rule. "Associate" counsel received a copy of the review. Later, in a telephone conversation with the assistant counsel, he advised the assistant counsel he had no "rebuttal" to it. In a written document addressed to the convening authority, assistant counsel recited the substance of the conversation with "associate" counsel and stated that the associate had "no matters in rebuttal." The document was signed by the assistant over the title, "Assistant Detailed Defense Counsel." The record contains no evidence to indicate whether either military counsel had informed civilian counsel of the review, or that civilian counsel had had an opportunity to participate in the response to it. The Court upheld the procedure as being in compliance with *Goode.* In his separate opinion, Judge Perry observed that, absent evidence to the contrary, it may be presumed that "counsel who did receive a copy of the review shared it with his civilian colleague and arrived at an agreed-upon course." *Id.* at 378. I believe that the inference as to shared responsibility equally applies to sustain the authority of detailed assistant counsel to act as such to report officially the defense response to the post-trial review.

*Daly, Annis,* and *Jeanbaptiste* impel me to conclude the representation by a lawyer in a formal proceeding that he is counsel to a party imports an established attorney-client relationship between them; and, in the absence of evidence to the contrary, such representation is sufficient proof of the fact of the relationship. As my dissent in *Daly* indicated, the inference can be challenged. *See also* my dissent in *United States v. Davis,* 5 M.J. 451 (C.M.A. 1978).

In my opinion, therefore, the attorney-client relationship was presumptively in effect here, and substitute military counsel properly acted for the accused to satisfy the *Goode* rule.

Aside from the inference of counsel's official representation of his relationship with the accused, consideration must be given to the accused's conduct. In *Annis* the Court held that actions of the accused and his civilian counsel established "consent" to the substitution of military counsel and a waiver of "any error in the severance" of accused's relationship with the original trial defense counsel. In *Iverson* the accused repudiated the substitution of military counsel at the first opportunity available to him. This case is opposite. Instead of repudiating substitute counsel, the accused adopted counsel's work product.

In his response to the post-trial review, substitute counsel did not merely assert the inappropriateness of his appointment; he went on to recite circumstances which, he contended, justified official inquiry to determine whether trial defense counsel had been mentally and physically incompetent to render effective assistance to the accused at trial. This statement was made the subject of an assignment of error before the Court of Military Review. In that assignment, accused asserted that the staff judge advocate had erred by "failing to comment upon the issues raised in the *Goode* response, and, therefore, did not adequately provide guidance for the convening authority." Having affirmatively adopted the work product of substitute military counsel, the accused cannot now, in my opinion, repudiate counsel's representation of him. *United States v. Annis, supra.*

In any event, assuming I am wrong in my view of the merits of the issue, I must still disagree with the disposition directed by the majority. As I indicated in my opinion in *Iverson*, I believe that when a case is forwarded by the court-martial authority for further review, as provided by the Uniform Code, the "attorney-client relationship between the accused and military counsel at that level ends by operation of law." *Id.* at 447. Consequently, if the majority is right in its conception of the legal issue, the proper procedure is simply to provide for new counsel for the accused in accordance with Article 38(b), Code, *supra*. *United States v. Silas*, 1 M.J. 7, 8 (C.M.A. 1975).